Filed
11 March 29 P12:42
Gary Fitzsimmons
District Clerk
Dallas District

CAUSE NO. DC-11-04013

| | | |
|---|---|---|
| PEACHTREE ATTORNEY FINANCE, LLC, <br> Plaintiff, | § § § § | IN THE DISTRICT COURT |
| v. | § § | G-134TH JUDICIAL DISTRICT |
| THE COREA FIRM, PLLC and THOMAS M. COREA, <br> Defendants. | § § § § | DALLAS COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE COURT:

Plaintiff Peachtree Attorney Finance, LLC files this its Original Petition against Defendants The Corea Firm, PLLC and Thomas M. Corea, and in support thereof would respectfully show the Court as follows:

### I.

### DISCOVERY CONTROL PLAN

1. Plaintiff intends to conduct discovery in this case under Level 2 of Texas Rule of Civil Procedure 190.

### II.

### PARTIES

2. Plaintiff Peachtree Attorney Finance, LLC (hereinafter "Peachtree" or "Plaintiff") is a Delaware limited liability company with its principal place of business located in Atlanta, Georgia.

3. Defendant The Corea Firm, PLLC ("Corea Firm") is a Texas professional limited liability company and may be served with citation through its managing partner, Thomas M. Corea, at 1201 Main Street, Suite 4100, Dallas, Texas 75270, or wherever he may be found.

4. Defendant Thomas M. Corea ("Corea") is an individual resident of the State of Texas who may be served at his usual place of business, 1201 Main Street, Suite 4100, Dallas, Texas 75270, or wherever he may be found.

5. Defendants Corea Firm and Corea will sometimes hereinafter be referred to collectively as "Defendants."

## III.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Defendants in that Defendants executed contracts which provided for performance in whole or in part Texas. The amount in controversy is within the jurisdictional limits of this Court.

7. Venue of this action is proper in Dallas County, Texas pursuant to Tex. Civ. Prac. & Rem Code Ann. §15.002 because one or both Defendants are residents of Dallas County, Texas.

## IV.

## BACKGROUND FACTS

8. Peachtree is a specialty finance company and is in the business of making business working capital loans to attorneys and law firms, including those whose law practice is focused on personal injury work. Corea Firm is a law firm which is heavily involved in personal injury matters in which the attorney's fees are contingent upon recovery for the law firm's clients. Law firms, like the Corea Firm, require capital to operate their law practices. Peachtree provides the capital for such law firms in the form of business loans.

9. Corea Firm contacted Peachtree seeking a source of capital to fund costs and expenses incurred by Corea Firm in prosecuting personal injury claims on behalf of its clients.

Because Corea Firm does not recover those costs and expenses until monies are recovered, it desired an interim funding source to use for working capital and case expenses. The parties entered into discussions regarding a line of credit for the Corea Firm and eventually Peachtree and Corea Firm agreed to an arrangement whereby Peachtree would make Advances (as that term is defined in the Credit Agreement referenced herein) as requested by Corea Firm and as set forth in the Credit Agreement.

10. Via a Revolving Credit Agreement dated November 5, 2008 (the "Credit Agreement," a true and correct copy of which is attached hereto as Exhibit A), Peachtree and Corea Firm formalized their agreement for Peachtree to make loans/advances to Corea Firm for use in its personal injury practice, to cover overhead, costs and expenses. As set forth in the Credit Agreement, Peachtree agreed to make Advances to the Corea Firm as requested by Corea Firm, up to the Borrowing Limit, fixed at $300,000 in the Credit Agreement. Corea Firm was required to repay the Advances on the terms set forth in the Credit Agreement and the related Master Revolving Loan Note dated November 5, 2008 in the amount of $300,000 (the "Note," a true and correct copy of which is attached hereto as Exhibit B).

11. The Credit Agreement was secured by Corea Firm's execution of a Security Agreement dated November 5, 2008 (the "Security Agreement," a true and correct copy of which is attached hereto as Exhibit C), whereby Corea Firm granted Peachtree a security interest in all of Corea Firm's accounts, receivables, chattel paper, deposit accounts, equipment, investment property, general intangibles, and all proceeds from same. To perfect its security interest, Peachtree filed a UCC-1 Financing Statement (the "Financing Statement," a true and correct copy of which is attached hereto as Exhibit D) with the Texas Secretary of State.

12. As additional security for the Credit Agreement and the Note, Corea executed a Guaranty dated November 5, 2008 (the "Guaranty," a true and correct copy of which is attached hereto as Exhibit E) whereby Corea personally guaranteed the Corea Firm's performance of all obligations under the Credit Agreement and promised to personally repay all Advances made by Peachtree under the Credit Agreement.

13. Following execution of the Credit Agreement and the other documents referenced above which were executed in connection therewith, Peachtree made Advances to Corea Firm as requested and in accordance with the terms of the Credit Agreement. The balance owed by the Corea Firm under the Credit Agreement is in excess of $135,118.62, reflecting the Advances made to the Corea Firm since the date the Credit Agreement was signed plus interest.

14. In breach and violation of the terms of the Credit Agreement, the Corea Firm has failed and refused to repay the monies and amounts due and owing under the Credit Agreement and Note. Peachtree has made demand upon Corea Firm for payment, but no payments have been forthcoming. In fact, the Corea Firm has made no payments related to this indebtedness.

15. During his discussions with Peachtree, Corea has maintained that Corea Firm has repaid Peachtree in full in accordance with the Credit Agreement. Peachtree has conducted an exhaustive search of its records and those records and the facts known to Peachtree confirm that the Corea Firm has not paid the amounts due and owing in full and the indebtedness remains outstanding. Despite being requested to do so, Corea has not provided any proof of the Corea Firm's alleged payment to Peachtree and has recently ceased communications with Peachtree. Peachtree has no record of the attempted payment in full by the Corea Firm for the monies and amounts due under the Credit Agreement and Note. The Corea Firm has therefore breached and is in default of the Credit Agreement and the Note. Moreover, Corea has failed to honor and

**PLAINTIFF'S ORIGINAL PETITION--Page 4**

make the payments due under the Guaranty, and therefore he is in breach of the Guaranty and is individually liable under that instrument.

16. Moreover, Peachtree discovered that a UCC-3 Termination form had been filed with the Texas Secretary of State, terminating the UCC-1 that had been filed by Peachtree on October 6, 2010. The Texas Secretary of State has confirmed that Corea Firm filed the UCC-3 Termination. Corea Firm took this action improperly and without the consent or authorization of Peachtree. This action was clearly taken and/or authorized or directed by Defendants in order to interfere with the Security Agreement and the perfected security interest conveyed by Defendants to Peachtree, and to prejudice and hinder Peachtree's security interest and collateral rights, and was not authorized by Peachtree. Upon information and belief, Peachtree believes that the Defendants took this action in order that they may secure additional capital and loans from another source, using the collateral that the Corea Firm had pledged to Peachtree as collateral for the new indebtedness. As a result of all of the above, Peachtree has been forced to file this action in order to assert, protect and preserve its legal rights under the parties' agreements.

## V.

## CAUSES OF ACTION

A. Breach of Contract/Default under the Credit Agreement, Note and Guaranty

17. By virtue of Defendants' conduct in failing to make payment to Peachtree under the terms of the Credit Agreement, Note, and Guaranty, and in failing to take action to insure that Peachtree receives the benefit of its bargain with Defendants, Defendants have breached the Credit Agreement, Note, and Guaranty, which breach has caused Peachtree to sustain actual damages within the jurisdictional limits of this Court.

**PLAINTIFF'S ORIGINAL PETITION--Page 5**

B.  Promissory Estoppel and Unjust Enrichment

18. Defendants promised to honor and comply with their obligations under the documents at issue, including making payment as required by those documents. In reliance on said promises and others, Peachtree paid Corea Firm good and valuable consideration in the form of the Advances requested by it.

19. As a result of their failure to comply with these promises, Defendants are liable to Peachtree for damages as provided herein, and Peachtree is entitled to specific performance and to enforce its security interest under a theory of promissory estoppel.

20. Corea Firm was paid good and valuable consideration in exchange for which Defendants became obligated to comply with the terms of the Credit Agreement, Note and Guaranty, including to take action to insure that Peachtree received the benefits of its bargain with Defendants and to make payment to Peachtree in accordance with same. Defendants knew consideration was being furnished and expenses were being incurred on their behalf by Peachtree. Defendants also knew such consideration was being furnished and such expenses were being incurred with the expectation of consideration being paid, tendered, or provided in return. Defendants approved and agreed to the terms of the Credit Agreement, Note and Guaranty, accepted same and received the benefits therefrom. Defendants' actions in failing to make payment to Peachtree and in attempting to cancel Peachtree's security interest constitutes an unjust enrichment to Defendants which has accrued to the detriment of Peachtree. As a direct and proximate result of Defendants' actions, Peachtree has been damaged.

C.  Tortious Interference with, and Guardian of, Security Interest.

21. Via the Security Agreement, Peachtree acquired and had a valid security interest in Corea Firm's accounts, receivables, chattel paper, deposit accounts, equipment, investment

property, general intangibles, and all proceeds from same. Peachtree properly and validly perfected this security interest by filing a UCC-1 Financing Statement with the Texas Secretary of State. Defendants' actions in improperly filing a UCC-3 Financing Statement, therefore seeking to cancel Peachtree's perfected security interest, was taken without the knowledge and authorization of Peachtree and in contradiction of the related loan documents. Defendants' actions constitute an intentional and tortious interference with Peachtree's valid and perfected security interest, and a conversion of same, which interference has caused damages to Peachtree.

D.   Foreclosure and Enforcement of Security Interest.

22.   Pursuant to the Security Agreement, Corea Firm granted Peachtree a continuing, first priority, security interest in Corea Firm's accounts, receivables, chattel paper, deposit accounts, equipment, investment property, general intangibles, and all proceeds from same. The Credit Agreement, Security Agreement, and Texas law provide that in the event of a default, Peachtree has the right to enforce its security interest and lien in said items. Peachtree seeks a declaratory judgment that it is entitled to enforce its security interest and collect and receive the items to which it is entitled as a result of Defendants' default under and breach of the relevant contractual documents.

## VI.

### ATTORNEYS' FEES AND INTEREST

23.   Because of Defendants' breach of the Credit Agreement, Note, Guaranty and Security Agreement, Plaintiff has retained Nesbitt, Vassar, McCown & Roden, L.L.P. to prosecute its claim in this cause. Peachtree hereby seeks to recover from Defendants its reasonable and necessary attorneys' fees incurred in the prosecution of this lawsuit. As Peachtree has made a claim for breach of contract, Peachtree is entitled to recover its attorneys'

**PLAINTIFF'S ORIGINAL PETITION--Page 7**

fees pursuant to Tex. Civ. Prac. & Rem. Code Ann. §38.001. Peachtree further seeks pre- and post-judgment interest as allowed by law.

## VII.

## CONDITIONS PRECEDENT

24. All conditions precedent have occurred or have been performed by Peachtree or have been waived by Defendants to entitle Peachtree to all of the relief sought by Peachtree herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Peachtree Attorney Finance, LLC respectfully prays that Defendants The Corea Firm, PLLC and Thomas M. Corea be cited to appear herein and, upon the trial hereof, that Peachtree be awarded a judgment for actual damages, pre- and post-judgment interest, attorneys' fees and costs against Defendants as described above, as well as any and all other relief, both general and special, at law or in equity, to which Peachtree may show itself to be justly entitled.

Respectfully submitted,

NESBITT, VASSAR, MCCOWN & RODEN, L.L.P.
15851 Dallas Parkway, Suite 800
Addison, TX 75001
972.371.2411
Telecopier: 972.371.2410

By: _____
Earl S. Nesbitt
State Bar No. 14916900
David S. Vassar
State Bar No. 20503175

ATTORNEYS FOR PLAINTIFF PEACHTREE ATTORNEY FINANCE, LLC

**PLAINTIFF'S ORIGINAL PETITION--Page 8**